UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VALERO MARKETING AND SUPPLY COMPANY, | § § § | NO. 5:19-CV-328-DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § § | |

ORDER GRANTING MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS

The matter before the Court is Defendant United States of America's

Motion for Partial Judgment on the Pleadings.  (Dkt. # 28.)  A hearing was held on

this matter on July 14, 2020.  After careful consideration of the memoranda filed in

support of and in opposition to the motion, as well as arguments of counsel at the

hearing, the Court, for the following reasons, **GRANTS** the motion.

BACKGROUND

On April 1, 2019, Valero Marketing and Supply Company ("Valero")

filed suit in this Court against the Government.  (Dkt. # 1.)  Valero seeks a tax

refund of over $121 million for the first quarter of the tax year 2015 ("disputed tax

period").  (Id.)  According to Valero, on April 30, 2015, it timely filed a Quarterly

Federal Excise Tax Return ("Form 720") for the disputed tax period—January 1,

2015, through March 31, 2015, with the Internal Revenue Service ("IRS").  The Form 720 reported a total 26 U.S.C. § 4081 ("section 4081") fuel excise tax in the amount of $565,025,097 for the disputed tax period, which Valero timely paid.

Several years later, on April 26, 2018, Valero filed an Amended Quarterly Federal Excise Tax Return ("Form 720X") for the disputed tax period with the IRS, claiming a refund of the section 4081 fuel excise tax in the amount of "$4.00 Plus," plus statutory interest.  Valero contends this refund claim is based on Alternative Fuel Mixture Credits ("AFMC") that it had not previously claimed on its original Form 720 for the disputed tax period.

On April 1, 2019, Valero filed this suit on the basis that more than six months have passed since it filed the Form 720X seeking the refund, and that the IRS has neither paid nor denied the refund request for the disputed tax period. (Dkt. # 1.)  Valero contends that it is entitled to a refund for the overpayment it made to the IRS, but the Government has refused to recognize that several substances qualify as "alternative fuels" for tax credit purposes.  (Id.)

On March 2, 2020, the Government filed a Motion for Partial Judgment on the Pleadings.  (Dkt. # 28.)  Valero filed a response in opposition on March 30, 2020 (Dkt. # 32); the Government filed a reply on April 13, 2020 (Dkt. # 34).

APPLICABLE LAW

The Government moves for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(c).  A motion brought pursuant to Rule 12(c) should be granted if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law.  Greenberg v. Gen. Mills Fun Grp., Inc., 478 F.2d 254, 256 (5th Cir. 1973).  A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim.  See In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209 (5th Cir. 2010).

Rule 12(b)(6) allows a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted."  The Court evaluates whether a complaint states a cognizable claim and sufficient facts in light of Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Stated differently, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements

3

will not do." <u>Twombly</u>, 550 U.S. at 555. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 556 U.S. at 678 (quotation marks omitted).

In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" <u>United States ex rel. Vavra v. Kellogg Brown & Root, Inc.</u>, 727 F.3d 343, 346 (5th Cir. 2013) (quoting <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007)).

## ANALYSIS

Pursuant to 26 U.S.C. § 6426, Valero seeks an AFMC for those fuels it sold that were mixed with: (1) compressed or liquified gas derived from biomass; (2) liquid fuel derived from biomass; or (3) butane, a type of liquified petroleum gas ("LPG"). (Dkt. # 1.) The Government moves for partial judgment on the pleadings in order to eliminate two of these three refund claims brought by Valero. (Dkt. # 28.) According to the Government, Congress recently clarified the law regarding the credits at issue, barring payment of some claims that were not filed with the IRS before January 8, 2018. (<u>Id.</u>) The Government seeks only to dismiss Valero's claims arising from butane and liquified gas derived from biomass, but not Valero's claims arising from liquid fuel derived from biomass. (<u>Id.</u>)

A.   <u>Statutory History</u>

In 2005, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA").  SAFETEA introduced two tax credits related to alternative fuels under 26 U.S.C. § 6426: (1) the alternative fuel credit—§ 6426(d), and (2) the alternative fuel mixture credit—6426(e).  Relevant here, § 6426(e) allows taxpayers to obtain a credit for "producing any alternative fuel mixture for sale or use in a trade or business of the taxpayer."  § 6426(e)(1).  The statute defines an "alternative fuel mixture" as a "mixture of alternative fuel and taxable fuel" that is either "sold by the taxpayer . . . for use as fuel" or "used as a fuel by the taxpayer producing such mixture." § 6426(e)(2)(A)–(B).  Prior to December 20, 2019, the statute listed seven "alternative fuels," including "liquefied petroleum gas," "liquefied gas derived from biomass," and "liquid fuel derived from biomass," § 6426(d)(2), relying on 26 U.S.C. § 4083(a)(1)(A)–(C) to define "taxable fuel."  <u>Id.</u>  Under § 4083, "taxable fuel" means "(A) gasoline, (B) diesel fuel, and (C) kerosene."  26 U.S.C. § 4083(a)(1).  Since SAFETEA's enactment, Congress has repeatedly extended the credit, retroactively, and the Code has allowed an AFMC in some form for fuels produced and sold through December 31, 2020.

Relevant here, on December 20, 2019, in its 2020 Appropriations Act, Congress enacted a "Clarification of Rules Regarding Alternative Fuel Mixture Credit," (hereinafter "clarification" or "clarification amendment") which disallowed the AFMC for mixtures of taxable fuel with "liquified petroleum gas," "compressed or liquified natural gas," or "compressed or liquified gas derived from biomass." See Further Consolidated Appropriations Act, 2020, P.L. No. 116-94, § 133(b)(1), 133 Stat. 2534, 3233–34 (2019).  This clarification amendment applies to "fuel sold or used before [the Act's] date of enactment" if the claims for the credit had "not been paid or allowed," and if the claims "were made on or after January 8, 2018." Id.; § 133 (b)(2)(B).

B.   Valero's Claims for Butane and Liquified Gas Derived from Biomass

The Government argues that Valero's claims for butane and liquified gas derived from biomass must be dismissed in light of Congress's recent clarification that taxpayers who file a claim for credit on or after January 8, 2018, and for which the IRS has not paid or allowed that refund claim as of December 20, 2019 (the date of enactment of the 2020 Appropriations Act) are barred.  (Dkt. # 28 at 10.)  The Government asserts that Valero's claims for butane and liquified gas derived from biomass were filed with the IRS on April 26, 2018, well after the January 8, 2018 date delineated by Congress.  (Id.)  In such case, according to the Government, Valero may not obtain tax credits for the disputed tax period based

6

on any mixture of a liquified petroleum gas or liquified gas derived from biomass and a taxable fuel and these claims must be dismissed from this suit.  (Id.)

In response to the Government's motion, Valero appears to concede that the AFMC is no longer allowed for liquified petroleum gas, compressed or liquified natural gas, or compressed or liquified gas derived from biomass.  (Dkt. # 32 at 7.)  Nevertheless, Valero argues that Congress's amendment is not fatal to its claims because the legislation violates the Due Process Clause of the Fifth Amendment and is therefore invalid.  (Id.)

Upon the Court's review, the Court finds that Valero's refund claims for butane and liquified gas derived from biomass fall within Congress's December 20, 2019 clarification, and these claims will be dismissed unless the Court determines that the clarification violates the Due Process Clause.

C.      <u>Does Congress's 2019 Clarification Violate the Due Process Clause of the Fifth Amendment?</u>

Valero contends that the 2019 clarification amendment violates the Due Process Clause of the Fifth Amendment because the retroactivity period is excessive.  (Dkt. # 32 at 8.)  Valero also argues that there is no rational basis for making retroactive application depend on when a taxpayer files a refund claim with the IRS.  (Id. at 18.)

7

In <u>United States v. Carlton</u>, 512 U.S. 26, 30 (1994), the Supreme

Court noted that "[t]his Court repeatedly has upheld retroactive tax legislation

against a due process challenge."  A retroactive tax provision is valid under the

Due Process Clause unless "retroactive application is so harsh and oppressive as to

transgress the constitutional limitation."  <u>Welch v. Henry</u>, 305 U.S. 134, 147

(1938).  The "harsh and oppressive" standard "does not differ from the prohibition

against arbitrary and irrational legislation" that applies generally to enactments in

the sphere of economic policy.  <u>Pension Benefit Guaranty Corp. v. R.A. Gray &</u>

<u>Co.</u>, 467 U.S. 717, 733 (1984).  The Due Process standard to be applied to tax

statutes with retroactive effect is the same as the standard generally applicable to

retroactive economic legislation:

> Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches . . . To be sure, . . . . retroactive legislation does have to meet a burden not faced by legislation that has only future effects . . . .  "The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former" . . . .  But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.

<u>Id.</u> at 729–30 (citation omitted).

In <u>Carlton</u>, the Supreme Court determined that a retroactive

amendment to a tax statute did not violate due process where the retroactive period

was of reasonable length (slightly more than one year) and where the
Government's purpose was neither illegitimate nor arbitrary.  Carlton, 512 U.S. at
32–33.  In that case, the executor of a decedent's estate challenged an amendment
which restricted the availability of an estate tax deduction.  The executor had
engaged in a particular transaction for the sole purpose of taking advantage of the
deduction.  Id. at 28–29.  The Court rejected the executor's Due Process argument,
noting that there was "no plausible contention that Congress acted with an
improper motive, as by targeting estate representatives such as Carlton after
deliberately inducing them to engage" in the transactions at issue.  Id. at 32.  The
Court further noted that the executor's reliance, by itself, was insufficient to
establish a constitutional violation because "[t]ax legislation is not a promise, and a
taxpayer has no vested right in the Internal Revenue Code."  Id. at 33.  Finally, the
Court stated that the executor's lack of notice regarding the amendment was not
dispositive because "a taxpayer 'should be regarded as taking his chances of any
increase in the tax burden which might result from carrying out the established
policy of taxation.'"  Id. at 34 (quoting Milliken v. United States, 283 U.S. 15, 23
(1931)).

Here, the Government contends that the retroactive amendment has
the rational legislative purposes of "protect[ing] the public purse," "provid[ing]
clarity in this area," and clarifying Congress's intent that "gasoline [should not]

qualify for this credit based on its butane content."  (Dkt. # 28 at 10.)  As support,

the Government cites to the comments that Senators Chuck Grassley and Ron

Wyden made on the Senate floor prior to the clarification's enactment to express

these purposes.  (Dkt. # 28-1 at 2.)  Senator Grassley stated that the AFMC credit

"is intended to promote the use of nontraditional fuels, such as compressed natural

gas and biomass-based fuels, for transportation and other purposes," but that "some

in the oil industry have sought to turn this credit on its head by claiming the credit

for ordinary gasoline based on the amount of butane mixed in."  (Id.)  The Senators

noted that "[a]ll gasoline includes butane," and that "[a]dding butane during the

gasoline refining process is simply how gasoline is produced"; thus, the "idea that

Congress intended oil companies to benefit from a credit intended to reduce our

dependence on traditional gasoline by rewarding them for making traditional

gasoline doesn't pass the commonsense test."  (Id.)

Senator Grassley further discussed how he was "the chairman of the

Senate Finance Committee when the alternative fuel mixture credit was enacted in

2005 as part of a surface transportation bill," and that "[d]uring that time, there was

great interest in reducing our dependence on foreign oil and traditional fuels."

(Dkt. # 28-1 at 2.)  He noted that the AFMC "was added to reduce that

dependence, not to provide a handout to large oil and gas companies," and that "if

anyone had thought that oil companies could qualify for this credi[t] they already

10

engaged in, the credit would have never been enacted."  (Id.)  Senator Grassley stated that "[n]ot only would I have objected on policy grounds, but the Joint Committee on Taxation's revenue score associated with the provision would have been so large that its passage wouldn't have been feasible."  (Id.)  Senator Wyden agreed, pointing out that "given the significant amount of tax dollars at stake," it is "important for Congress to provide clarity in this area, to protect the public purse." (Id.)  The Senators also discussed that the amendment to the AFMC addresses their concerns "to more explicitly deny the credit for butane mixed with gasoline."  (Id.)

The Senators' comments make clear that the purpose of the clarification amendment and its retroactive application was to protect the public fisc and to limit the ability of oil and gas companies to get a large refund of excise taxes for making gasoline in the same manner they always had made.  These legislative purposes are rational and reasonable.[1]  See Carlton, 512 U.S. at 32.

Still, Valero argues that there is no rational basis for making a retroactive application turn on the happenstance of when a taxpayer filed a refund

---

[1] In support of its position, the Government stated at the hearing that Valero could hardly "dispute[] that there's a legitimate purpose in protecting the Treasury from $50 billion in claims which is what the amount of the potential butane claims, not just this case but all potential claims according to the Joint Committee on Taxation said that's the potential exposure."  (Official Hearing Transcript at 7.)  The Government further maintained that "I don't think plaintiff disputes that it's a legitimate purpose to protect the Treasury from an outlay of that size."  (Id.)  The Court agrees.

claim with the IRS.  (Dkt. # 32 at 18.)  Valero contends that the 2019 amendment arbitrarily distinguishes among taxpayers based on when they filed their refund claim with the IRS.  (Id.)  Valero also argues that extending the retroactivity period based not solely on when the subject activity or transaction occurred, but also on when the taxpayer submitted the claim, is inconsistent with due process principles. (Id.)  Valero asserts that the amendment differentiates between taxpayers that engage in the same activity during the same time period, applying one list of fuels eligible for the AFMC to some taxpayers and a different, narrower list to other taxpayers based on when they filed a refund claim.  (Id. at 19.)  For this reason, Valero maintains that there is no rational basis for tying the retroactive effect of a statute to the timing of filing a refund claim.  (Id.)  Likewise, Valero argues that there is no rational basis for tying the refund claim deadline to the January 8, 2018 date the IRS published its guidance.  (Id. at 20.)

Regarding this argument, the Court agrees with the Government that the dates selected by Congress are rational because they are within the period for which the credit was revived.  (See Dkt. # 34 at 7.)  Barring any claims made after January 8, 2018, includes those substances mixed during the period for which Congress just revived the credit—2018 and 2019.  This delineation rationally satisfies Congress's choice to no longer incentivize the use of the substances for AFMC in § 6426(e), in distinction to the alternative fuel credit found in § 6426(d).

Additionally, the Court agrees with the Government that it is rational to bar claims such as Valero's for activities occurring prior to January 8, 2018, but that were not claimed until after that time and had not yet been paid at the time of the 2019 clarification amendment.  As noted by the Government, the IRS has a rational purpose in paying claims promptly in order to avoid interest on overpayment.  See 26 U.S.C. § 6611.  In this way, the January 8, 2018 date distinguishes between claimants who promptly file claims and those who seek belated refunds.  The Government also points to the rational purpose of Congress tying the amendment to the date of the IRS's pronouncement in Revenue Ruling 2018-02 which put taxpayers on notice that the IRS considered that butane related blending did not qualify for the credit.  (See Dkt. # 34 at 8.)  The Court agrees. "Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code."  Carlton, 512 U.S. at 33.

Still, the Court must also consider other factors in assessing the retroactive tax legislation at issue here, including Valero's arguments that: (1) the period of retroactivity is unduly harsh; and (2) the amendment is not a "curative measure."  (Dkt. # 32 at 8–18, 20.)

1.   <u>Period of Retroactivity</u>

Valero argues that under the Supreme Court guidance in <u>Carlton</u>, the retroactivity period for tax legislation should not exceed one or two years.  (Dkt. # 32 at 8.)  Valero asserts that <u>Carlton</u> approved only of a "modest" retroactivity period of one to two years and, thus, the retroactivity period in this case of nearly five years[2] is substantially longer, raising "serious constitutional concerns."  (<u>Id.</u> (citing <u>Carlton</u>, 512 U.S. at 38 (O'Connor, J., concurring)).)  Valero further argues that Congress failed to act promptly in amending the statute.  (Dkt. # 32 at 12.)  Valero points to the fact that the AFMC was enacted in 2005, originally including both LPG and compressed or liquified gas, and two years later compressed or liquified gas from biomass was added.  (<u>Id.</u>)  Thus, according to Valero, Congress excluded these substances 13 years and 11 years later, respectively.  (<u>Id.</u>)  Valero argues this is the "antithesis of prompt action."  (<u>Id.</u>)  Valero contends that taxpayers' interest in finality and repose with respect to their tax liability

---

[2] Valero bases this amount on the date of the December 2019 amendment, which retroactively barred Valero's two AFMC claims involving conduct during, and tax paid for, the first quarter of 2015.  (<u>See</u> Dkt. # 32 at 10.)  Valero also notes that, in general, the retroactivity period reaches back to October 1, 2014, because under the applicable excise tax return statute of limitation (which cannot be extended), taxpayers had until January 31, 2018, to file a refund claim for the quarter starting on that date.  (<u>Id.</u>); <u>see</u> 26 U.S.C. §§ 6511(a), 6513(a); 26 C.F.R. § 40.6071(a)–1(a).

14

outweighs the Government's interest in raising revenue through retroactive legislation.  (Id. at 12–13.)

Valero's argument is premised on Justice O'Connor's concurring opinion in Carlton in dicta that "A period of retroactivity longer than the year preceding the legislative session in which the law was enacted would raise, in my view, serious constitutional questions."  Carlton, 512 U.S. at 38 (O'Connor, J., concurring).  Nevertheless, the Court finds, as have many other courts considering the issue, that Justice O'Connor's comments were not meant to amount to a per se rule in all cases of every variety involving taxes.  Importantly, a majority in Carlton did not embrace a one-year rule, but instead provided a more flexible framework for deciding the due process question.  See Montana Rail Link, Inc. v. United States, 873 F. Supp. 1415, 1421 (D. Mont. 1994) (rejecting plaintiff's argument that all retroactive legislation must have a "short and limited period" of retroactivity, stating "in Carlton the Court did not establish a specific time frame for the validity of retroactive legislation"); Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue, 221 Ariz. 123, 211 P.3d 1, 5–6 (2008) (rejecting interpretation of Carlton as standing for proposition that "retroactivity in excess of one year . . . creates a due process issue" and holding six-year period of retroactivity did not violate due process), review denied, (Ariz. 2009); Miller v. Johnson Controls, Inc., 296 S.W.3d 392, 399 (Ky. 2009) (rejecting "a specified modesty period," noting

eight of the nine justices in Carlton did not subscribe to a one-year limit on

retroactivity); see also Canisius Coll. v. United States, 799 F.2d 18, 26–27 (2d Cir.

1986), cert. denied, 481 U.S. 1014 (1987) (rejecting "a one-year bench mark as the

constitutional limit of retroactivity," and holding four-year retroactive application

of curative statute was not violative of due process); cf. Licari v. Comm'r of

Internal Revenue, 946 F.2d 690, 695 (9th Cir. 1991) (rejecting due process

challenge to statute retroactively increasing tax penalty, noting a four-year period

of retroactivity was not, by itself, sufficient to violate due process), aff'd, 946 F.2d

898 (9th Cir. 1991); Temple Univ. v. United States, 769 F.2d 126, 135 (3d Cir.

1985), cert. denied, 476 U.S. 1182 (1986) (in case involving clarifying legislation

applied retroactively to plaintiff's tax returns going back six years, court stated,

"no federal court of appeals has yet adopted an absolute temporal limitation on

retroactivity," citing case allowing a nine-year period of retroactivity).

Additionally, in a case decided prior to Carlton, the Fifth Circuit stated that "We

think the 'harsh and oppressive' test of Welch v. Henry does not limit retroactivity

to one year, but instead requires a case-by-case analysis in which the length of the

period affected is but one factor to be considered."  See Wiggins v. C.I.R., 904

F.3d 311, 316 (5th Cir. 1990) (citing Welch, 305 U.S. at 147).  Moreover, to the

extent Carlton stands for the proposition that tax statutes must have a certain period

of retroactivity, the Court finds that proposition is inapplicable here because the

amendment here is a curative measure as discussed below.  See id. ("Where

legislation is curative, retroactive application may be constitutional despite a long

period of retroactivity.").

The Court also rejects Valero's argument premised on the idea that

only a modest period of retroactivity can satisfy due process using the due process

principles outlined above.  As discussed, the rational legislative purposes of the

2019 clarification amendment passed by Congress were to "protect the public

purse," "provide clarity in this area," and clarify Congress's intent that "gasoline

[should not] qualify for this credit based on its butane content."  Clearly then, the

2019 amendment was a reasonable fit with these legislative purposes.  Valero has

not demonstrated why these purposes are advanced by making the period of

retroactivity only one or two years, but not five years.  See The Constitutionality of

Retroactive Legislation, 73 Harv. L. Rev. at 704 ("[W]hen dealing with curative

statutes, the Court has consistently held that the legislative purpose is of itself

sufficient to justify the concomitant retroactivity."); cf. Rocanova v. United States,

955 F. Supp. 27, 30 (S.D.N.Y. 1996) (holding six-year period of retroactivity for

lengthened statute of limitations governing government claims for back taxes did

not violate due process as "[t]he very purpose of the Amendment required its

application to all existing tax liabilities"), aff'd, 109 F.3d 127 (2d Cir.), cert.

denied, 522 U.S. 821 (1997); Johnson Controls, 296 S.W.3d at 401 (rejecting due

process challenge to 2000 statute that gave effect to taxing authority's interpretation of tax statute from 1988 to 1994, an interpretation that was held erroneous by the Kentucky Supreme Court in 1994); see generally City of Muscatine v. Waters, 251 N.W.2d 544, 548 (Iowa 1977), superseded by statute on other grounds as stated in City of Des Moines v. City Dev. Bd., 473 N.W.2d 197, 199 (Iowa 1991) (stating a curative act "is necessarily retrospective in character"). Accordingly, the Court finds that given the amendment's purpose, there was no way to avoid a period of retroactivity of several years in this case.

### 2.   Curative Amendment

Valero argues that the retroactivity period of the 2019 clarification amendment cannot be classified as "curative" because it is a wholesale change in the law and eliminates eligibility for three categories of fuel that expressly qualified for the AFMC.  (Dkt. # 32 at 15.)  Valero also takes issue with Congress's elimination of compressed or liquified gas derived from biomass, but not liquid fuel derived from biomass even though they were produced at the same biomass facility in Louisiana.  (Id. at 16–17.)  Valero further contends that eliminating butane from the AFMC is not a curative measure to correct an unforeseen circumstance at issue in Carlton.  (Id.)  Instead, according to Valero, it is a wholesale change in the law.  (Id.)

In response, the Government first asserts that the 2019 clarification amendment is not retroactive with respect to claims for mixing butane on the basis that such mixtures have never qualified for the AFMC.  (Dkt. # 34 at 3.)  The Government cites several recent district court opinions which have held that butane is excluded from the term LPG in § 6426 and is not an alternative fuel for the purposes of § 6426(e)'s AFMC.  See Vitol, Inc. v. United States, No. H-18-2275, 2020 WL 1442136 (S.D. Tex. Feb. 25, 2020); U.S. Venture, Inc v. United States, __ F. Supp. 3d __, 2020 WL 1366418 (E.D. Wis. Mar. 23, 2020).  Thus, according to the Government, to the extent the 2019 clarification amendment precludes payment on claims for butane as an LPG, it has no retroactive effect because mixing butane with gasoline never qualified for the credit.  (Dkt. # 34 at 4.)  Upon review, the Court takes note of the cases cited by the Government, and while it finds their reasoning persuasive, the parties have not adequately briefed this issue in their memoranda on the instant motion.  Thus, the Court declines to decide this issue at this time.

The Government argues in the alternative, however, that the 2019 clarification amendment is nevertheless a curative act for both butane and other removed substances because it works to "avoid the refund of monies *already collected and spent*" as opposed to merely raising revenue.  (Dkt. # 34 at 4 (quoting Zaber v. City of Dubuque, 789 N.W. 2d 634, 646–67 (Iowa 2010)

(emphasis in original)).)  Additionally, according to the Government, the 2019

amendment's bar of claims not yet "paid or allowed" ratifies the IRS's

administrative treatment of those claims, especially those for butane.  (Id.)  Thus,

the Government maintains that once Congress learned taxpayers sought to

misconstrue the AFMC, it quickly cured the relevant statute with the 2019

Clarification.  (Id.)  The Government also asserts that Congress timely acted

because the refund claims at issue here have only been made in recent years.  (Id.);

see also H.R. Rep. 116-379 at 61 (2020) (noting that "in late 2016 or early 2017,

promotional literature appeared urging taxpayers to assert on amended returns that

butane (a standard component chemical present in all gasoline), when blended with

gasoline, constituted an alternative fuel mixture.").

        Regarding the removed substances other than butane, the Government

argues that Congress was concerned with other "post-hoc attempts to obtain a

windfall" for other substances ultimately removed from the list of alternative fuels

that may be used to create an alternative fuel mixture by the 2019 clarification.

(Dkt. # 34 at 6.)  The Government cites a report from the House Ways and Means

Committee ("the Report") for a parallel House Bill from the last legislative session

which discusses the Committee's awareness "of disputes regarding the meaning of

compressed natural gas."  (Dkt. # 28-4 at 4 n.182.)  Regarding this, the Report

states that the "IRS Chief Counsel issued informal advice on the meaning of

'compressed natural gas' for purposes of section 6426," which notes that

compressed natural gas "is generally defined as natural gas in its gaseous form that

is contained under pressure of approximately 2,400 to 3600 psi (per square inch)

and of the quality required for use as a fuel in vehicles."  See FSA No. 20151001F

(March 6, 2016) https:// www.irs.gov/pub/irs-lafa/151001f.pdf.  According to the

Report, "[t]he Committee is aware that some taxpayers argue that lower levels of

pressure sufficient to get any natural gas through a pipeline from the wellhead

should qualify as [compressed natural gas] for purposes of the alternative fuel

mixture credit," but that "[t]his interpretation is not consistent with Congressional

intent to subsidize fuel capable of being used as a substitute for traditional motor

vehicle fuel."  (Dkt. # 28-4 at 4 n.182.)  In this way, the Government maintains

Congress distinguished between compressed or liquified gas derived from biomass

and liquid fuel derived from biomass in eliminating the former from AFMC.  (Dkt.

# 34 at 6–7.)

Upon consideration, the Court agrees with the Government that the

2019 clarification is a curative measure designed to reduce or eliminate ambiguity

or mistake in an otherwise applicable law.  As in Carlton, without the 2019

clarification, the original provision "would have created a significant and

unanticipated revenue loss" to the U.S. Treasury.  See 512 U.S. at 32.

Furthermore, like Carlton, there is "no plausible contention that Congress acted

with an improper motive, as by targeting [the taxpayer]." Id.  And, given the evidence presented to the Court that refund claims such as the ones Valero makes in this case were only recently filed within the last four or so years, the Court finds that Congress acted promptly in enacting the 2019 clarification in order to cure the potential windfall large oil and gas companies might receive from "the refund of monies *already collected and spent*."  See <u>Zaber</u>, 789 N.W.2d at 646.

Accordingly, for all of the reasons discussed above, the Court finds that Valero has not carried its burden to establish the unconstitutionality of Congress's action.  The Court thus finds that the 2019 clarification amendment is consistent with the Due Process Clause of the Fifth Amendment.  The Court will therefore **GRANT** the Government's motion for partial judgment on the pleadings.

<u>CONCLUSION</u>

In light of the foregoing, the Court **GRANTS** the Government's Motion for Partial Judgment on the Pleadings.  (Dkt. # 28.)  The Court **DISMISSES** Valero's refund claims for butane and liquified gas derived from biomass.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 31, 2020.

_____
David Alan Ezra
Senior United States District Judge